**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RICHARD DAVIS | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-02607 |
| | § | |
| | § | |
| DATA CAPTURE SOLUTIONS- REPAIR | § | |
| AND REMARKETING, INC., YELLOWFIN | § | |
| HOLDINGS, INC., AND JT HOLDINGS, | § | |
| LLC | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Richard Davis filed suit in Texas state court against Data Capture Solutions Repair and Remarketing, Inc. ("DCS"), Yellowfin Holdings, Inc., and JT Holdings, LLC, asserting causes of action for breach of contract, promissory estoppel, negligent misrepresentation, and unjust enrichment. (Docket Entry No. 1, Ex. A). The defendants timely removed. (Docket Entry No. 1). Yellowfin Holdings and JT Holdings answered and moved to dismiss, (Docket Entry No. 6, 11), and Davis responded, (Docket Entry No. 10, 12). Based on a careful reading of the pleadings, the motion, the parties' submissions, and the applicable law, this court grants the defendants' motion to dismiss for lack of personal jurisdiction in part; defers it in part; and grants Davis's request for additional discovery, with limits. The motion to dismiss for lack of personal jurisdiction is granted to the extent it is based on the contacts of Yellowfin Holdings and JT Holdings. To the extent the motion to dismiss is based on the argument that the jurisdictional contacts of DCS may be imputed

1

to Yellowfin Holdings and JT Holdings, decision on the motion is deferred.  Davis's request for limited discovery on whether the jurisdictional contacts of the subsidiary may be imputed to the parent is granted.  This discovery is limited to written discovery requests and to the threshold jurisdictional question.  This limited discovery must be completed by **November 30, 2009.**  Davis may supplement the record on the motion to dismiss no later than **December 18, 2009.**  The defendants may respond by **January 8, 2010.**

The reasons for these rulings are explained below.

## I.    Background

Davis began working as a salesman for DCS in mid-March of 2005.  (Docket Entry No. 1, Ex. A).  Davis alleges in his complaint that DCS is a subsidiary of Yellowfin Holdings and/or JT Holdings.  (*Id.*).  Davis entered into a commission agreement with DCS that provided for a percentage of the sales he made on behalf of the company.  (*Id.*).  Davis alleges that in "September/October" of 2007, he secured a contract with the Army and Airforce Exchange Service ("AAFES") "for approximately 14 million to 20 million dollars, plus additional future revenue based on continued sales."  (*Id.* at 3).

Davis was fired from DCS on June 12, 2009.  (Docket Entry No. 1, Ex. A).  In this suit, he claims that he is owed additional commission for the AAFES contract.  (*Id.* at 4).  According to Davis, DCS management told him that he would be "compensated for 100% of the revenues from the AAFES contract."  (*Id.* at 3).  Davis alleges that the defendants breached their contract with him by not paying him all the commission owed.  (Docket Entry No. 1, Ex. A at 4).  He also alleges "detrimental reliance/promissory estoppel" based on the defendants' promises to pay him more commission than he received.  (*Id.*).  Davis also alleges that the defendants negligently

misrepresented the commissions he would receive.  (*Id.* at 4-5).  Davis's fourth cause of action was

"unjust enrichment/quantum meruit," (Docket Entry No. 1, Ex. A at 5), based on the allegations that

the defendants were and will continue to be unjustly enriched by not paying the full commission

amount owed to Davis under the agreement.  (*Id.*).  Davis seeks damages in the amount of the unpaid

commissions and asks that "a trust be established to collect future payments to which he is entitled

for sales generated by his efforts in the future."  (*Id.* at 5).

Yellowfin Holdings and JT Holdings filed a joint answer and motion to dismiss and DCS

filed a separate answer.  (Docket Entry Nos. 7, 8).  Yellowfin Holdings and JT Holdings moved to

dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, Rule

12(b)(3) for improper venue, and Rule 12(b)(6) for failure to state a claim.  (Docket Entry No. 7);

FED. R. CIV. P. 12(b)(2), (b)(3), (b)(6).  These defendants argue that they lack the "continuous and

systematic contacts" with Texas necessary for general jurisdiction and that specific jurisdiction is

not present because the claims "do not arise out of any alleged contacts by Defendants with Texas."

(Docket Entry No. 6 at 2).

In response to the defendants' motion to dismiss, Davis argues that Yellowfin Holdings, JT

Holdings, and DCS are "fully integrated and are simply used to create a corporate fiction."  (Docket

Entry No. 10 at 1).  Davis stated that he needs to depose Joseph Teixeira, DCS's president, to

respond to the motion to dismiss.  (*Id.* at 2).  According to Davis, Teixeira is also the principal of

JT Holdings and the president and director of Yellowfin Holdings.  (*Id.*).  Davis requests limited

additional discovery to  "provide adequate information for this Court to determine whether the

corporate form should be disregarded" for the purpose of conferring personal jurisdiction.  (Docket

Entry No. 10 at 2).  He requests an opportunity to take a brief limited deposition of Teixeira and

limited written discovery on the defendants within 45 days of a court order.  (*Id.*).

In their brief in support of the motion to dismiss, (Docket Entry No. 11), Yellowfin Holdings and JT Holdings maintain that they do not have sufficient contacts with Texas to establish personal jurisdiction.  (*Id.* at 4).  These defendants also argue that the additional discovery Davis seeks is "unnecessary and burdensome as the only proper defendant in this case and only defendant over whom the Court may exercise personal jurisdiction is Plaintiff's former employer, [DCS]."  (*Id.*).  These defendants argue that Yellowfin Holdings and JT Holdings do not have "any business activities in Texas," did not purposefully avail themselves of the benefits and protections of Texas law, have no contacts "that arise from or are directly related to Plaintiff's causes of action," and lack the "continuous and systematic contacts required for general jurisdiction."  (*Id.* at 6).  Yellowfin Holdings and JT Holdings argue further  that "[t]he parent-subsidiary relationship between Yellowfin and  [DCS] is also insufficient for the exercise of personal jurisdiction," and that exercise of personal jurisdiction over them "would offend traditional notions of fair play and substantial justice."  (*Id.*).

In response to the defendants' brief, Davis contends that this court does have grounds to exercise specific jurisdiction over all the defendants because the contract between DCS and AAFES was executed in Texas and is "still in effect and ongoing."  (Docket Entry No. 12 at 2).  Davis alleges that Yellowfin Holdings and JT Holdings are "fully integrated" with DCS, which does not challenge personal jurisdiction.  (Docket Entry No. 10 at 1).  Davis seeks to impute DCS's Texas contacts to Yellowfin Holdings and JT Holdings to establish personal jurisdiction over them.  Davis states that he provided DCS's financial statements to AAFES as part of the due diligence work in the contract negotiations and saw that the financial statement from DCS "was a copy of the

Yellowfin Holdings, Inc. and Subsidiaries/Affiliates Financial Statement." (Docket Entry No. 12 at 2-3). Davis argues that because this financial statement "was necessary for AAFES to rely on [DCS's] ability to perform under the contract," and Yellowfin Holdings benefitted from the contract, "Yellowfin purposely availed itself of the privilege of conducting business in Texas." (Docket Entry 12 at 3). Davis argues that this is a sufficient nexus for this court to exercise specific personal jurisdiction over Yellowfin Holdings.

In response to the argument by Yellowfin Holdings and JT Holdings and that the contacts of a subsidiary should not be imputed to the parent for the purpose of determining personal jurisdiction, Davis argues that Yellowfin Holdings's financial statement, dated December 31, 2007, shows that Yellowfin Holdings and DCS "are related through common ownership and management" and that the separate corporations should be disregarded. (*Id.* at 5). In a footnote in his response, Davis states that the relationship between JT Holdings and both Yellowfin Holdings and DCS "must be explored"; "[i]t is clear that there is common ownership and management, but there may be other relevant issues and evidence that cannot be properly addressed without limited discovery." (*Id.* at 4, n.1). Davis's response renews his request to depose Teixeira and conduct limited written discovery on the corporate relationships to determine whether the jurisdictional contacts of DCS may be imputed to Yellowfin Holdings and JT Holdings.

### III.   The Applicable Legal Standards

#### A.      Personal Jurisdiction

"In a diversity action, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (citations omitted). "A federal district court may exercise

personal jurisdiction over a nonresident defendant if (1) the forum state's long arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Freudensprung v. Offshore Tech. Serv. Inc.*, 369 F.3d 327, 343 (5th Cir. 2004) (emphasis omitted).  The Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE. § 17.041 *et seq.*, confers jurisdiction to the limit permitted by due process. *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990) (citation omitted);  *see also Freudensprung*, 369 F.3d at 343.  In Texas, the personal jurisdiction inquiry is the due process analysis. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424–25 (5th Cir. 2005).

Due process limits the exercise of personal jurisdiction over nonresident defendants to cases in which defendants purposefully establish "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  A court must determine first, whether the defendant has the requisite minimum contacts with the forum state, and second and whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Panda Brandywine*, 253 F.3d at 867 (citations omitted).

"The minimum contacts prong of the test for personal jurisdiction is further subdivided into those contacts that give rise to specific jurisdiction, and those that give rise to general jurisdiction." *Freudensprung*, 379 F.3d at 343.  A court may assert personal jurisdiction under a theory of either general or specific personal jurisdiction.  A court exercises specific jurisdiction over a defendant if the cause of action alleged arises out of, or is related to, the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  When a court

6

exercises personal jurisdiction over a defendant in a case not arising out of or related to the defendant's contacts with the forum state, the court is exercising general jurisdiction over the defendant.  *Id.* at 414 n.9.

A court may exercise specific jurisdiction if: "(1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant[']s contacts with the forum state."  *Freudensprung*, 379 F.3d at 343.  The plaintiff must also demonstrate that exercising personal jurisdiction over the defendant would be fair and reasonable.  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citing *Nuovo Pigone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state before a court may exercise general personal jurisdiction.  *See Helicopteros*, 466 U.S. at 414–15; *Johnston v. Multidata Systems Intern. Corp..*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Helicopteros*).  The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed to support specific jurisdiction.  *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (citations omitted).  "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.'"  *Holt Oil & Gas v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (citations omitted)).  The continuous and systematic contacts test for general jurisdiction "is a difficult one to meet, requiring extensive contacts between a defendant and

a forum." *Submersible Sys., Inc. v. Perforadora Central, S.A.*, 249 F.3d 413, 419 (5th Cir. 2001) (citation omitted). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (citation omitted).

When a nonresident defendant challenges *in personam* jurisdiction, the plaintiff bears the burden of demonstrating facts supporting jurisdiction. *Johnston,* 523 F.3d at 609 (citations omitted). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart*, 772 F.2d at 1192. "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "'must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts[.]'" *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (alteration original) (additional citations omitted)). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine*, 253 F.3d at 869.

In deciding whether personal jurisdiction exists over a nonresident defendant, the court may rely on written submissions or hold an evidentiary hearing. *See Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 173 (5th Cir. 1994). The court also has the discretion to allow discovery on the issue of personal jurisdiction. "When the defendant disputes the factual bases for jurisdiction . . . the court may receive interrogatories, depositions, or 'any combination of the recognized methods of

discovery' to help it resolve the jurisdictional issue." *Walk Haydel & Assocs.*, *v. Coastal Power Produc. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). An evidentiary hearing is appropriate when the jurisdictional facts are separate from the facts on the merits. *Id.* Discovery is appropriate when it is could reveal information relevant to determining whether the court has personal jurisdiction. "Discovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact." *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 855 (5th Cir. 2000). Discovery rulings on personal jurisdiction are reviewed under the abuse of discretion standard and "will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Seiferth*, 472 F.3d at 270 (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000) (same).

### B.    Imputing A Subsidiary's Jurisdictional Contacts to a Parent

In determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts, courts presume the independence of related corporations, such as parent and subsidiary. *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925); *Freudensprung*, 379 F.3d at 346. This presumption of corporate separateness may be overcome by clear evidence that one corporate entity exerts sufficient control over the other to make it an agent or alter ego and thus "'fuse the two together for jurisdictional purposes.'" *Freudensprung*, 379 F.3d at 346 (quoting *Hargrave v. Fibreboard Corporation*, 710 F.2d 1154 (5th Cir. 1983) (other citations omitted)); *see also Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 n.18 (5th Cir. 2002) (collecting cases). The burden of making a *prima facie* showing of such corporate relatedness is on the proponent of the agency or alter-ego theories. *Kelly,* 213 F.3d at 854, 856 (5th Cir. 2000).

As a general matter, courts "demand proof of control by the parent over the internal business

operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *Hargrave,* 710 F.2d at 1160 (collecting cases).  In *Hargrave,* after deciding the personal jurisdiction issue, the Fifth Circuit set out factors to be considered in deciding, as a matter of substantive law, when a subsidiary is the alter ego of its parent.  *Id.* at 1162-63.  The *Hargrave* factors are: (1) the amount of stock owned by the parent; (2) whether the two corporations have separate headquarters; (3) whether the corporations have common officers and directors; (4) whether the corporations observe corporate formalities; (5) whether the corporations maintain separate accounting systems; (6) whether the parent exercises complete authority over general policy; and (7) whether the subsidiary exercises complete authority over daily operations.  *Id.*  No one factor is determinative; the court must consider the totality of the circumstances.  *Sapic v. Gov't of Turkm.*, 345 F.3d 347, 359 (5th Cir. 2003).  The Fifth Circuit later found the *Hargrave* factors applicable in "deciding whether a parent company can be held amenable to personal jurisdiction because of the acts of a subsidiary."  *Dickson Marine Inc. v. Panalpina*, *Inc.*, 179 F.3d 331, 338-39 (5th Cir. 1999).

## III.   Analysis

### A.      The Parties' Forum Contacts

Yellowfin Holdings and JT Holdings were organized or incorporated in Connecticut and have their principal places of business in Connecticut.  (Docket Entry No. 11 at 5).  DCS is a wholly owned subsidiary of Yellowfin Holdings.  (Docket Entry No. 12, Ex. 2 at 16).  DCS does not maintain an office in Texas.  It conducts business in Texas through sales agents – or, at least did when Davis was employed by DCS – who work from their own homes.  According to the defendants, Yellowfin Holdings "does not have an office in Texas; does not have an agent or representative in Texas; does not have shareholders, directors, officers, or employees in Texas; does

not own or rent property in Texas; does not have bank accounts in Texas; does not advertise in Texas; and does not have regular or ongoing business in Texas." (Docket Entry No. 11 at 7). The same assertions are made for JT Holdings, a real estate company "that holds one building on one lot of land in Connecticut." (*Id.* at 8). The defendants argue that the only contacts with Texas "were those arising from the employment relationship between Plaintiff and [DCS]. Plaintiff was never employed by Yellowfin or JT Holdings. . . ." (Docket Entry No. 11 at 9).

Davis argues that the Texas contacts of Yellowfin Holdings and JT Holdings arise from the contract he secured between AAFES and DCS, which was executed in Texas "and is still in effect and ongoing." (Docket Entry No. 12 at 2). Davis emphasizes that he provided AAFES with Yellowfin Holdings's financial statement in the contract negotiations. Davis alleges that "Yellowfin is a direct beneficiary of the contract entered into by Data Capture in Texas" and "[a]s a result, Yellowfin purposefully availed itself of the privilege of conducting business in Texas." (*Id.* at 3). Davis submitted Yellowfin's December 2007 financial statement as an exhibit to his response. (Docket Entry No. 12, Ex. 2). The financial statement does say that DCS is a wholly owned subsidiary of Yellowfin Holdings and JT Holdings is an "affiliate" of Yellowfin Holdings. (Docket Entry No. 12, Ex. 2 at 10).

### B.    Personal Jurisdiction

The record discloses no basis to find general or specific personal jurisdiction over Yellowfin Holdings or JT Holdings unless the jurisdictional contacts of DCS are imputed. Davis has not alleged or submitted any evidence that Yellowfin Holdings or JT Holdings has any connection to, or presence in Texas, other than the contract between DCS and AAFES. There is no basis for general jurisdiction over Yellowfin Holdings or JT Holdings. Nor is there a basis for specific

jurisdiction.  Davis alleges that by supplying its financial statement for the due diligence process with AAFES, Yellowfin Holdings "purposefully availed itself of the privilege of conducting business in Texas." (Docket Entry No. 12 at 3).  This argument is unpersuasive.  The Fifth Circuit has declined to find specific jurisdiction over foreign corporations with far more significant contacts with the forum state than the submission of a financial statement.  In *Freudensprung*, the plaintiff alleged that the defendant corporation "purposefully availed itself of the benefits and protections of the state of Texas" by: (1) contracting with a Texas-based corporation; (2) contemplating arbitration of any contractual disputes in Texas; (3) "initiating and contemplating a long-term business relationship" with a Texas corporation; (4) engaging in communications with a Texas company in developing and carrying out a contract and (5) wiring payments to a Texas company in Texas. *Freudensprung*, 379 F.3d at 344.  The court found that despite those allegations, the plaintiff had not alleged sufficient minimum contacts to satisfy the requirements for specific jurisdiction. *Id*.  The panel stated:

> this Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.

*Id.; see also Holt Oil & Gas Corp. v. Harvey*, 802 F.2d 773, 778 (5th Cir. 1986) (finding no specific jurisdiction over nonresident defendant that entered into a contract with a Texas resident, sent an agreement and checks to Texas, and engaged in extensive communications with the plaintiff in Texas); *Stuart*, 772 F.2d at 1192-94 (finding no basis for specific jurisdiction over a nonresident defendant that contracted with Texas residents, directed phone calls and letters to Texas, shipped items to Texas, negotiated a contract with plaintiffs governed by Texas law, and marketed its

product in Texas).

Simply supplying a financial statement for a subsidiary company's contractual negotiations is not enough to establish specific personal jurisdiction.  Yellowfin Holdings did not enter into the contract, initiate the contact, or communicate with any of the parties involved.   Apparently Yellowfin Holdings responded to a request for information from Davis. It may be true that Yellowfin will benefit from the contract with AAFES as the parent company of DCS, but that does not mean it "purposefully directed its activities at the forum state."  *Alpine View Co.*, 205 F.3d at 215.  Davis has not alleged sufficient facts to justify an exercise of specific personal jurisdiction over the defendants.  The one limited contact between the nonresident defendants and Texas is not enough to make it foreseeable that the defendants would be "haled into court" in Texas.  *Alpine View Co.*, 205 F.3d at 215 (citing *Burger King*, 471 U.S. at 474).

### C.      Imputing DCS's Jurisdiction Contacts to Yellowfin Holdings and JT Holdings

Davis alleges that DCS's contacts with Texas should be imputed to its parent, Yellowfin Holdings, under the "alter-ego doctrine."  (Docket Entry No. 12).  Davis must "make a prima facie showing that [the parent] so controls other organizations that the activities of those organizations may be fairly attributed to [the parent] for purposes of asserting jurisdiction over it."  *Alpine View Co.*, 205 F.3d at 218; *see also Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999) (stating that under Texas law, the alter-ego doctrine applies when  the parent and subsidiary are so unified that their separateness has ceased and holding only the subsidiary liable would result in injustice.).

Davis cites Yellowfin Holdings's financial statement and argues that Yellowfin Holdings acquired all the outstanding stock of DCS in 2004, Yellowfin Holdings and DCS are both

13

Connecticut corporations, and the two companies are related through "common ownership and management." (Docket Entry No. 12, Ex. 2 at 10). The Yellowfin Holdings financial statement refers to Yellowfin Holdings, DCS, and another Yellowfin Holdings subsidiary collectively as the "Company." (*Id.*). Davis alleges that Teixeira is the principal of JT Holdings, the president of DCS and the president and director of Yellowfin Holdings. (Docket Entry No. 10). In Teixeira's affidavit, he states that he is the "President and Chief Executive Officer" of DCS. He also states that he has knowledge of the business of Yellowfin Holdings and JT Holdings, but does not say whether he is not an officer of either. (Docket Entry No. 11, Ex. A).

Davis also submitted the defendants' corporate records, obtained by a Westlaw search, that lists Teixeira as the principal for all three companies. (Docket Entry No. 10, Ex. A). Teixeira is listed as the president of DCS, the president of Yellowfin Holdings, and a member of the JT Holdings LLC. (*Id.*). He is the only principal listed for JT Holdings and one of only two listed for both DCS and Yellowfin Holdings. Kristie L. Teixeira, who is listed as having the same address as Teixeira, is the Vice President of DCS and the Secretary for Yellowfin Holdings. (*Id.*).

The law is clear that "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *Hargrave*, 710 F.2d at 1160; *see Gardemal*, 186 F.3d at 593 (stating that stock ownership, shared officers, financing arrangements, and the like do not alone establish an alter-ego relationship.). For the alter-ego doctrine to apply, the parent must exercise a degree of control greater than what is normally associated with common ownership and directorship. *Alpine View Co.*, 205 F.3d 219 (citing *Hargrave*, 710 F.2d at 1160). There must be "proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes."

14

*Hargrave*, 710 F.2d at1160.

The present record does not present evidence of financial arrangements, stock ownership, and common leadership between Yellowfin Holdings and DCS that would permit this court to impute DCS's jurisdictional contacts with Texas to Yellowfin Holdings. The record does not reveal the details of the relationship. The information Davis presented about Teixeira's principal role in Yellowfin Holdings suggests that Teixeira's affidavit does not present a complete picture of Teixeira's involvement with the parent company. Davis requested an opportunity to conduct limited discovery on the relationship between Yellowfin Holdings and JT Holdings on the one hand and DCS on the other hand. There are factual questions about the extent of Teixeira's management of each company, the segregation of equity and assets between the companies, and the degree to which a formal barrier is kept between each corporate entity. Discovery would be probative on each of these issues. This court grants Davis's request to conduct discovery limited to the relationship between Yellowfin Holdings and JT Holdings on the one hand, and DCS on the other, as it pertains to the alter-ego theory for establishing personal jurisdiction. This discovery is limited to written discovery requests and to the threshold jurisdictional issue. Davis's request to depose Teixeira is denied at this time because it appears that the written discovery will provide the information the parties and the court need to resolve the personal jurisdiction motion.

## IV.    Conclusion and Order

The motion to dismiss for lack of personal jurisdiction is granted to the extent it is based on the contacts of Yellowfin Holdings and JT Holdings. The motion to dismiss is not decided to the extent it is based on the argument that the jurisdictional contacts of DCS may be imputed to Yellowfin Holdings and JT Holdings. Davis may propound written discovery requests on the

15

threshold jurisdictional question.  This limited discovery must be completed by **November 30, 2009.**

Davis may supplement the record on the motion to dismiss no later than **December 18, 2009.**  The

defendants may respond by **January 8, 2010.**

SIGNED on October 13, 2009, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge

16